1   Michael Peffer (SBN: 192265)
    **PACIFIC JUSTICE INSTITUTE**
2   2200 N. Grand Ave.
3   Santa Ana, CA 92704
    Tel: (714) 796-7150
4   Email: michaelpeffer@pji.org

5   Attorney for Plaintiff, MATT CAMP

6

7                       **UNITED STATES DISTRICT COURT**
8                       **CENTRAL DISTRICT OF CALIFORNIA**

9
    MATT CAMP, an individual,                    Case No.: 5:22-cv-02220 JGB (KKx)
10
11                    Plaintiff,
                                                  **VERIFIED COMPLAINT FOR**
12   vs.                                          **VIOLATION OF RIGHTS UNDER TITLE**
                                                  **VII OF THE CIVIL RIGHTS ACT OF**
13   L.A. ARENA COMPANY, LLC; and LA LIVE         **1964 [42 U.S.C. 2000e et seq.]**
     PROPERTIES, LLC; and LA LIVE THEATRE,
14   LLC; ANSCHUTZ ENTERTAINMENT                  **(DEMAND FOR JURY TRIAL)**
     GROUP, INC., et al, and DOES 1 to 100,
15   inclusive
16                    Defendants.
17
18
19

20                              **INTRODUCTION**
21
          Plaintiff, MATT CAMP, brings this action against L.A. Arena Company, LLC, LA Live
22
    Properties, LLC, and LA Live Theatre, LLC, (AEG) a privately held corporation. This action is
23
    based on violations of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et. seq.) and
24
    the California Fair Employment and Housing Act (Cal. Govt. Code 12900 et seq.), and the
25
    common law tort of Wrongful Termination in Violation of Public Policy.
26
          The gravamen of this Complaint is that the Defendant refused to accommodate, retaliated
27
    against, otherwise discriminated against, and subsequently terminated Plaintiff because he asked
28
                                            - 1 -
    **VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS**
    **ACT OF 1964 [42 U.S.C. 2000E ET SEQ.]**

for accommodation to his religious beliefs. Defendant knew or should have reasonably known that Mr. Camp held religious beliefs because he asserted them. Defendant nevertheless failed to accommodate and terminated an employee in retaliation for seeking an accommodation.

## JURISDICTION AND VENUE

1)      This Court has authority over this action pursuant to 28 U.S.C. § 1331, in federal questions raised under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. This Court has supplemental authority over Plaintiff's related claims arising under corollary state anti-discrimination law pursuant to 28 U.S.C. § 1367(a), and the common law tort of Wrongful Termination in Violation of Public Policy.

2)      Venue is proper in the Central District of California under 42 U.S.C. § 2000e-5(f)(3), in that the Defendant maintains significant operations within the Central District of California. The location of the company who's the alleged unlawful employment practices took place is within the Central District of California. This case is appropriate for assignment to the Los Angeles Division. The Defendant maintains significant operations in Los Angeles County, and the situs of the alleged unlawful employment practices took place at the Defendant's Los Angeles company location.

## PARTIES

### PLAINTIFF

3)      At all times relevant herein, Matt Camp was an employee of AEG and worked his final position as a Camera Operator. Mr. Camp resided in Orange County when he first began his employment, but lived in Los Angeles County, for 8 months, and has lived in Riverside County thereafter and is living in Riverside County presently.

### DEFENDANT

4)      Upon information and belief, L.A. Arena Company, LLC, LA Live Properties, LLC, and LA Live Theatre, LLC, are privately held companies operating in the city of Los Angeles, Los Angeles County, California. At the time of the events that gave rise to this

- 2 -

1   Complaint, AEG employed Plaintiff as a Camera Operator. Though DEFENDANT has stated
2   that Anschutz Entertainment Group, Inc., (AEG), was incorrectly named as party, most of the
3   documentation referred to by both the Plaintiff and Defendant are from AEG and will be retained
4   in this suit.

5                          **STATEMENT OF FACTS**

6        5)      Mr. Camp was employed with AEG, from August 2012 to January 2022. He held
7    a Camera Operator's position with DEFENDANT.

8        6)      Mr. Camp is a follower of the Christian faith.

9        7)      Mr. Camp believes that his body belongs to God and is a temple of the Holy
10   Spirit.

11       8)      Mr. Camp believes that it is against his religion to ingest or inject his body
12   with possible harmful substances.

13       9)      On November 17, 2021, Angela Baker, Sr. VP of Human Resources (HR) for
14   Staples Center, sent a memo to the employees announcing that the Broadcasting and Event
15   Presentations departments fell under "Covered Persons" for the AEG COVID 19 Vaccination
16   policy (Policy). AEG's COVID-19 Vaccine Policy will serve as "Exhibit One" to this
17   Complaint.

18       10)     AEG's Policy purportedly allows a Religious Exemption Request to be filed by
19   employees with a sincere religious belief that would require an exemption from them being
20   vaccinated with the COVID-19 Vaccine.

21       11)     AEG alleged that Mr. Camp was not allowed access to the Control Room or
22   restricted red zone areas due to his unvaccinated status. AEG stated this was a policy for all
23   unvaccinated employees. According to Mr. Camp, he and other vaccinated and unvaccinated
24   employees had access to the control room until his last physical working day on December 26,
25   2021. This is one instance of many where DEFENDANTS did not adhere to its own safety
26   measures, but then would use required vaccination status as an excuse to discriminate against
27   Mr. Camp.

28                                   - 3 -

12)   On December 25, 2021, Mr. Camp submitted his request for a religious exemption by sending a letter with DEFENDANTS stating his religious reasons for not receiving the COVID-19 vaccine.

13)   AEG received a total of 71 requests for exemptions for medical reasons and religious exemptions. Of the 71 requests, 45 were for religious exemptions, and AEG honored only six of those exemptions. AEG only offered discriminatory and mocking language, coupled with trivializing Mr. Camp's religious exemption request. AEG further failed to offer Mr. Camp any reasonable accommodation.

14)   Mr. Camp addressed personal family experiences in his concerns for receiving the vaccine and how they were only a part of his religious reasons for not injecting his body with a harmful substance. AEG only further mocked Mr. Camp by stating that Mr. Camp's concerns were "overblown" and "unfounded", and "Camp tries to *dress up* his health concerns as a religious objection by *sprinkling* the letter with Bible verses and references to God." This is grossly discriminatory language to anyone's faith that is protected by the First Amendment, 42 U.S.C. 2000e, et seq. of the Title VII of the 1964 Civil Rights Act, and the California Fair Employment and Housing Act. With such language, AEG puts itself in position as a final judge of one's faith and what qualifies as religious enough. To further this point, AEG failed to acknowledge that Mr. Camp stated clearly in his religious exemption letter that these personal experiences were reasons for concern that were within his religious beliefs.

15)   On January 6, 2022, AEG had Mr. Camp complete AEG's COVID-19 Request for Religious Accommodation Interactive Process form to further invade Mr. Camp's right to freedom of religion by questioning how truly religious Mr. Camp is. Again, this form only proves that AEG grossly discriminated against Mr. Camp and others in placing AEG as the deciding factor  and judge as to what is religious enough to receive an accommodation. What is abundantly clear is that this is a sham process where very few employees obtained an accommodation, because AEG set itself up as the arbiter of what is and what is not religious.

16)   AEG stated that Mr. Camp offered no accommodations in his request for religious

- 4 -

1  exemption. It is unclear as to why AEG believed that it was the responsibility of the exemption
2  requesting employee to design and discover a proper accommodation when AEG has stated that
3  the "Company provides reasonable accommodations" (AEG Policy, 3). Further, AEG has the
4  ability and control to accommodate Mr. Camp. If Mr. Camp has the ability to provide his own
5  accommodation, then Mr. Camp would logically also have the ability to accept his own religious
6  accommodation.

7      17)    On January 13, 2022, in AEG's denial letter, Mr. Camp's religious exemption was
8  denied and only offered a choice of taking the vaccine or be terminated.

9      18)    AEG's COVID-19 vaccine policy states that AEG follows the
10 CDC and California Department of Public Health (CDPH) policies and guidelines (Policy 3, 4).
11 The CDC and CDPH guidelines both grant exemptions for religious exemptions, weekly testing
12 of the unvaccinated, and the use of facemask as an alternative to receiving the COVID-19
13 vaccine.

14     19)    AEG was egregiously prejudicial against Mr. Camp when it failed to
15 follow the guidelines it claims to follow and which it put in writing to its employees. AEG
16 further failed when it did not honor Mr. Camp's religious exemption and refused to offer him
17 weekly testing and the use of facemask as an alternative to receiving the COVID-19 vaccine.

18     20)    On September 19, 2022, Mr. Camp obtained a "Right to Sue" letter from the U. S.
19 Equal Employment Opportunity Commission (EEOC).  A "Right to Sue" letter from either
20 EEOC or California Department of Fair Employment and Housing (DFEH) satisfies the
21 requirements of both the EEOC and the DFEH. This letter serves as Exhibit Two to this
22 complaint.

23

24                        **FIRST CAUSE OF ACTION**

25 **Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.] Termination**
   **and Retaliation based on Religion Against Defendant**
26     21) PLAINTIFF hereby incorporates and realleges the preceding paragraphs, as

27 though fully set forth herein.

28                                  - 5 -

22)     Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), it is an unlawful employment practice for an employer: (1) to fail or refuse to hire or discharge any individual, or otherwise discriminate against any individual with respect to his or his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his or his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or his status as an employee, because of such individual's race, color, religion, sex, or national origin.

23)     Mr. Camp was, at all times relevant herein, an employee and applicant covered by U.S.C. § 2000e et seq.

24)     Mr. Camp held a deeply sincere religious objection to receiving the COVID-19 vaccine injection.

24.     Mr. Camp's accommodation was denied.

25.     AEG did not attempt to and refused to accommodate Mr. Camp with any of the recommended accommodations they provided in AEG's COVID-19 Policy from November 2021.

26.     Therefore,  Mr. Camp's religious beliefs and practices were a motivating factor in his termination.

27.     PLAINTIFF suffered significant damages because of Defendant's unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action. Given the fact that those who do what PLAINTIFF does are a relatively small community, AEG's conduct caused damage to Mr. Camp's personal and professional reputation.

28.     AEG intentionally violated PLAINTIFF'S rights under Title VII with malice or reckless indifference.

29.     Mr. Camp is entitled to backpay, front pay, compensatory damages, punitive

- 6 -

**VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000E ET SEQ.]**

1  damages, attorney's fees, costs of suit, a declaration that Defendant violated his rights under

2  Title VII, and an injunction preventing Defendant from enforcing its discriminatory policies.

3        30.     Mr. Camp is entitled to further relief as set forth below in his Prayer for Relief.

4

5  **SECOND CAUSE OF ACTION**

6  **Violation of Title VII of the Civil Rights Act of 1964 [42 U.S.C. § 2000e et seq.]**
**Failure to Provide Religious Accommodation Against Defendant**

7

8        31.     PLAINTIFF hereby incorporates and realleges the preceding paragraphs, as

9  though fully set forth herein.

10        32.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., makes

11  unlawful employment practice to fail or refuse to accommodate the religious beliefs and

12  practices of an employee or prospective employee.

13        33.     Mr. Camp's suffered significant damages because of DEFENDANT'S unlawful

14  discriminatory actions, including emotional distress, past and future lost wages and benefits, and

15  the costs of bringing this action. Given the fact that those who do what PLAINTIFF does are a

16  relatively small community, AEG's conduct caused damage to Mr. Camp's personal and

17  professional reputation.

18        34.     DEFENDANT intentionally violated  Mr. Camp's rights under Title VII with

19  malice or reckless indifference.

20        35.     PLAINTIFF is entitled to backpay, front pay, compensatory damages, punitive

21  damages, attorney's fee, costs of the suit, a declaration that DEFENDANT violated his rights

22  under Title VII, and an injunction preventing DEFENDANT from enforcing its discriminatory

23  policies.

24        36.     PLAINTIFF is entitled to further relief as set forth below in his Prayer for Relief.

25  / / /

26  / / /

27  / / /

28
- 7 -

**VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS**
**ACT OF 1964 [42 U.S.C. 2000E ET SEQ.]**

**THIRD CAUSE OF ACTION**

**Violation of the California Fair Employment and Housing Act (Cal. Govt. Code § 12900 et seq.)—Discrimination and Retaliation based on Religious Creed Against Defendant**

37.     PLAINTIFF hereby incorporates and realleges the preceding paragraphs as though fully set forth herein.

38.     Under FEHA, it is further an unlawful employment practice for an employer to discriminate against an employee in compensation, terms, conditions, or privileges of employment, because of employee's religious creed.

39.     Mr. Camp was always relevant herein an employee for purposes of FEHA.

40.     PLAINTIFF was always relevant herein a member of a protected religious class.

41.     DEFENDANT was always relevant herein an employee for purposes of FEHA.

42.     FEHA broadly defines religious creed to include all aspects of observance and practice.

43.     DEFENDANT intentionally discriminates against  Mr. Camp by making an adverse employment decision against his by terminating his employment after 10 years of service.

44.     DEFENDANT demonstrated discriminatory animus toward PLAINTIFF by terminating his employment and showing callous indifference toward his sincere religious beliefs. DEFENDANT subsequently terminated PLAINTIFF without explanation or providing any alternative after PLAINTIFF'S request for religious accommodation. DEFENDANT terminated PLAINTIFF'S employment because of his religious creed. DEFENDANT discriminated against the PLAINTIFF based on his religious beliefs.

45.     Mr. Camp suffered damages because of Defendant's unlawful discriminatory actions, including the emotional distress, past and future loss of wages and benefits, and the cost of bringing this action. Given the fact that those who do what PLAINTIFF does are a relatively small community, AEG's conduct caused damage to Mr. Camp's personal and professional reputation.

- 8 -

46.     DEFENDANT intentionally violated Mr. Camp's rights under FEHA with malice or reckless indifference, and, as a result, are liable for punitive damages.

47.     PLAINTIFF is entitled to such other and further relief as more fully set forth below in his Prayer for Relief.

## FOURTH CAUSE OF ACTION

**Violation of the California Fair Employment and Housing Act (Cal. Govt. Code § 12900 et seq.)—Failure to Provide Religious Accommodations Against Defendant**

48.     PLAINTIFF hereby incorporates and alleges the preceding paragraphs as though fully set forth herein.

49.     Under FEHA, it is an unlawful employment practice for an employer to terminate a person's employment because of a conflict between the person's religious beliefs or observance and any employment requirement, unless the employer demonstrates that it has explored all reasonable means of accommodation of the religious beliefs or observances.

50.     PLAINTIFF was a person and an employee of DEFENDANT within the meaning of FEHA.

51.     DEFENDANT was always relevant herein employer of PLAINTIFF for purposes of FEHA.

52.     PLAINTIFF is a devout believer in Christianity. DEFENDANT was aware of PLAINTIFF'S sincerely held religious beliefs.

53.     PLAINTIFF holds strong beliefs based on his understanding of the teachings of Christianity, which prohibits Mr. Camp from utilizing vaccines made from fetal tissues or anything harmful to his body which he considers a temple of the Holy Spirit.

54.     PLAINTIFF requested an accommodation from DEFENDANT. DEFENDANT denied the request claiming an undue hardship in testing that was supplemented by the government, and clearly discriminated against and mocked PLAINTIFF in his religious beliefs.

55.     PLAINTIFF notified DEFENDANT'S administration that he would not be getting the vaccine and that he could not compromise his religious convictions.

- 9 -

59.     DEFENDANT suggested the PLAINTIFF should come up with acceptable accommodations and offered no accommodations other than PLAINTIFF receive the vaccine or be terminated.

60.     DEFENDANT'S refusal to accommodate, or even explore any kind of accommodation of PLAINTIFF'S religious beliefs, was a substantial motivating factor in DEFENDANT'S decision to deprive PLAINTIFF of the employment he had enjoyed for 10 years.

61.     PLAINTIFF suffered significant damages because of DEFENDANT'S unlawful discriminatory actions, including emotional distress, past and future lost wages and benefits, and the costs of bringing this action. Given the fact that those who do what PLAINTIFF does are a relatively small community, AEG's conduct caused damage to Mr. Camp's personal and professional reputation.

62.     DEFENDANT intentionally violated PLAINTIFF'S rights under FEHA with malice or reckless indifference.

63.     PLAINTIFF is entitled to backpay, front pay, compensatory damages, punitive damages, attorney's fees, costs to bring suit, a declaration that DEFENDANT violated PLAINTIFF'S rights under Title VII, and an injunction preventing DEFENDANT from enforcing their discriminatory policies.

64.     PLAINTIFF is entitled to further relief as more fully set forth below in his Prayer for Relief.

### FIFTH CAUSE OF ACTION

**Wrongful termination in violation of public policy – Common Law Tort Against Defendant**

65.     PLAINTIFF hereby realleges and incorporates by reference the preceding paragraphs as though fully set forth herein.

66.     PLAINTIFF was terminated for requesting a religious accommodation in compliance with both Title VII of the Civil Rights Act of 1964, and Cal. Govt. Code § 12900 et seq.

- 10 -

**VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000E ET SEQ.]**

67.     Cal. Govt. Code § 12920 states, "It is hereby declared as the public policy of this state that it is necessary to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religious creed."

68.     Cal. Govt. Code §12920 goes on to state, "Further, the practice of discrimination because of race, color, religion, sex, gender, gender identity, gender expression, sexual orientation, marital status, national origin, ancestry, familial status, source of income, disability, veteran or military status, or genetic information in housing accommodations is declared to be against public policy."

69.     PLAINTIFF was always relevant herein an employee of DEFENDANT and covered by 42 U.S.C. § 2000e, et seq., prohibiting discrimination in employment based on religion.

70.     PLAINTIFF was a person and an employer for purposes of 42 U.S.C. § 2000e, et seq.

71.     PLAINTIFF was a person and an employee of DEFENDANT within the meaning of FEHA.

72.     DEFENDANT was always relevant herein an employer of Plaintiff for purposes of FEHA.

73.     PLAINTIFF is a devout follower of Christianity. DEFENDANT was aware of the sincere religious beliefs PLAINTIFF held.

74.     PLAINTIFF held a deeply religious objection to receiving the COVID-19 vaccine and was denied accommodation although DEFENDANT recognized that PLAINTIFF had sincerely held beliefs.

75.     PLAINTIFF told DEFENDANT that he would be willing to adhere to the suggested accommodations mentioned by DEFENDANT in its COVID-19 Policy distributed November 2021.

76.     DEFENDANT did not provide any of these accommodations that it had

- 11 -

**VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000E ET SEQ.]**

1  suggested, and that PLAINTIFF was willing to adhere to.

2      77.     PLAINTIFF felt bullied and coerced into getting the COVID-19 vaccine, causing

3  anxiety and stress due to his employer forcing him to choose between his deeply held religious

4  beliefs and his financial livelihood and job.

5      78.     There were no valid reasons whatsoever for terminating PLAINTIFF'S

6  employment, other than PLAINTIFF requesting accommodation under Title VII and FEHA.

7      79.     PLAINTIFF'S religious beliefs and practices were therefore a motivating factor in

8  his termination. PLAINTIFF suffered a wrongful termination for exercising his right to seek an

9  accommodation of his truly sincere religious beliefs entitled to his under Title VII and FEHA.

10     80.     FEHA declares by statute that such unlawful termination is in violation of public

11 policy.

12     81.     PLAINTIFF suffered significant harm because of DEFENDANT'S unlawful

13 discriminatory actions, including emotional distress, past and future loss of wages and benefits,

14 and the costs associated with bringing this action. Given the fact that those who do what

15 PLAINTIFF does are a relatively small community, AEG's conduct caused damage to Mr.

16 Camp's personal and professional reputation.

17     82.     DEFENDANT intentionally violated PLAINTIFF'S rights under Title VII and

18 FEHA with malice or reckless indifference.

19     83.     PLAINTIFF is entitled to backpay, front pay, compensatory damages, punitive

20 damages, attorney's fees, costs of suit, a declaration that DEFENDANT violated his rights under

21 Title VII, and an injunction preventing DEFENDANT from enforcing its discriminatory policies.

22     84.     PLAINTIFF is entitled to further relief as more fully set forth below in his Prayer

23 for Relief.

24                          **PRAYER FOR RELIEF**

25     WHEREFORE, PLAINTIFF prays this Court grant relief as follows:

26     A.     Award PLAINTIFF backpay, including past loss of wages and benefits, plus

27 interest;

28

- 12 -

B.     Award PLAINTIFF his front pay, including future wages and benefits;

C.     Award PLAINTIFF other and further compensatory damages in an amount according to proof;

D.     Award PLAINTIFF noneconomic damages, including but not limited to mental health suffrage;

E.     Award PLAINTIFF his reasonable attorney's fees and costs of suit;

F.     Award PLAINTIFF punitive damages.

G.     Enjoin DEFENDANT from enforcing its discriminatory policies;

H.     Declare that DEFENDANT has violated Title VII of the Civil Rights Act and FEHA; and

I.     Grant PLAINTIFF such additional or alternative relief as the Court deems just and proper.

DATED: 12/15/2022             **PACIFIC JUSTICE INSTITUTE**

By: *Michael Peffer*
MICHAEL PEFFER, ESQ.,
Attorney for Plaintiff,
MATT CAMP

- 13 -

**VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000E ET SEQ.]**

1

## DEMAND FOR JURY TRIAL

2

PLAINTIFF, MATT CAMP hereby demands a jury trial in this matter.

3

4    DATED:   12/15/2022                              **PACIFIC JUSTICE INSTITUTE**

5

6                                                     By: *Michael Peffer*
                                                      MICHAEL PEFFER, ESQ.,
7                                                     Attorney for Plaintiff,
                                                      MATT CAMP
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                - 14 -
**VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS
ACT OF 1964 [42 U.S.C. 2000E ET SEQ.]**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **VERIFICATION**

I, Matt Camp, am the Plaintiff in the above-captioned matter. I have read the AMENDED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000e et seq.] and am familiar with same. The contents are true and accurate and known to me by personal knowledge except for those matters asserted on information and belief. As to those matters, I believe them to be true. I declare under penalty of lying under oath, under the laws of the United States and the State of California, that the foregoing is true and correct. Executed this *first* day of March 2023, in the County of Los Angeles, State of California.

_____

Matt Camp

**VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000E ET SEQ.]**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT ONE**

- 15 -

**VERIFIED COMPLAINT FOR VIOLATION OF RIGHTS UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [42 U.S.C. 2000E ET SEQ.]**

## ⊥. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Los Angeles District Office
255 E 1 Temple St, 4th Floor
los Angeles, CA 90012
(213) 785-3090
Website: ...

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On: 09/19/2022

**To:** Mall Camp
44506 La Paz Rd.
TEMECULA, CA 92592
Charge  o: 480-2022-02183

EEOC Representative and email:    Joe HuangValeriano
Federal Investigator
joe.huang-valeriano@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission.

Digitally Signed By Christine Park-Gonzalez
09/19/2022

Christine Park-Gonzalez
Acting District Director

c:
Robin   amuel
10250 Constellation Blvd Ste 1850
Los Angeles, CA 90067


Please retain this notice for your records.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT TWO**

- 16 -

# Fwd: Mandatory Employee COVID-19 Vaccination Policy-Action required

External

Inbox



**Matt Camp <[redacted]@gmail.com>**
to mpeffer

Wed, Feb 9, 3:05 PM

---------- Forwarded message ---------
From: **Angela Baker <<[redacted]**.com>
Date: Wed, Nov 17, 2021 at 11:50 AM
Subject: Mandatory Employee COVID-19 Vaccination Policy- Action required
To:
Cc: STAPLES Center HR <<[redacted]>

Hello team,

Please see the AEG COVID 19 Vaccination policy. The Broadcasting and Event Presentations departments fall under "Covered Persons" . You are receiving this email because as of today we have not received your proof of vaccination. If you are fully vaccinated, please send proof to <[redacted] If you have not yet been vaccinated for COVID-19, please see the policy and deadlines below.

In response to the COVID-19 pandemic, Anschutz Entertainment Group, Inc., on behalf of itself and its affiliates (collectively, the "Company") is implementing a mandatory vaccination policy, subject to the exceptions set out in this policy. This policy is based on the most recent guidance from the Centers for Disease Control and Prevention ("CDC"), the Equal Employment Opportunity Commission ("EEOC"), and other state and federal agencies, and complies with all applicable federal, state, and local laws. Compliance with this policy is a condition of employment for Covered Persons (as defined below) as of the Implementation Date (as defined below). Please read this policy carefully.

**Covered Persons**

This policy, where allowed by law, applies to the following:

• all full and part-time employees and non-employee contracted staff who work in Company offices;

• all AEG Presents full and part-time employees, including event-based personnel who work outside the office.

**Vaccination Requirements**

To prevent the infection and spread of COVID-19 in the workplace, protect our workforce from serious illness and business disruptions, and as an integral part of its public health and safety measures, the Company requires Covered Persons to be fully vaccinated against COVID-19, unless the Company has granted an exemption under this policy.

New hires must present proof that they are fully vaccinated against COVID-19 disease or basis for an exemption after receiving an offer of employment but before their start date. The Company will provide additional time to meet this requirement on a case-by-case basis, but in no case may they start employment without receiving their first vaccination dose by their start date and must complete their course of vaccinations within 39 days of the start date, unless they have an approved exemption.

Covered Persons who fail to comply with the requirements of this policy will be subject to disciplinary measures, up to and including termination of employment.

**Applicable Deadlines**

The Implementation Date for this policy is January 10, 2022. All Covered Persons must be fully vaccinated or have an approved exemption by the Implementation Date.

The deadline to submit proof of full vaccination or a request for accommodation or exemption is December 27, 2021.

**Approved COVID-19 Vaccines**

Unless an exemption is granted under this policy, Covered Persons must be fully vaccinated with a COVID-19 vaccine for which (i) the U.S. Food and Drug Administration ("FDA") has issued

a license or an Emergency Use Authorization ("EUA") or (ii) the World Health Organization under an Emergency Use Listing ("EUL") .

As of August 30, 2021, the FDA has determined that the following COVID-19 vaccines are safe and effective:

• the Pfizer-BioNTech COVID-19 vaccine (2 dose regimen) (FDA Licensed)

• the Moderna COVID-19 vaccine (2 dose regimen)

• the Johnson & Johnson (Janssen) COVID-19 vaccine (1 dose regimen)

An individual is considered "fully vaccinated" two weeks after the second dose of a two-dose vaccine (Moderna or Pfizer) or two weeks after a single-dose vaccine (Johnson & Johnson).

**Proof of Vaccination**

Covered Persons must submit proof of their vaccination by providing a copy of their CDC vaccination card (or foreign equivalent in the case of Covered Persons who received their vaccinations abroad), official documentation issued by a State vaccine registry, or an official medical record. Employees should not include any other medical or genetic information with their proof of vaccination. The Company will promptly return such proof of vaccination to Covered Persons and will keep retained vaccination information confidential as and to the extent required by law.

**Vaccine Administration**

Covered Persons are responsible for scheduling and obtaining all doses of an approved COVID-19 vaccine **no later than December 27, 2021.** Covered Persons may get vaccinated during their regularly scheduled work hours, if feasible.

**Accommodation and Exemption Requests**

Disability or Medical Accommodation

In accordance with the Company's ADA and Disability Accommodations Policy, the Company provides reasonable accommodations, absent undue hardship, to qualified individuals with disabilities that enable them to perform their job duties. Reasonable accommodation may include appropriate adjustment or modifications of employer policies, including this policy.

Exemptions or short-term deferrals of the requirements of this policy for other medical reasons may be available on a case-by-case basis for conditions such as pregnancy, history of certain allergic reactions, and any other medical condition that is a contraindication to the COVID-19 vaccine, even if such conditions do not qualify as a disability under federal, state, or local law.

The Company will engage in an interactive dialogue with you to determine whether an exemption is appropriate and can be granted without imposing an undue hardship on Company operations or posing a direct threat to you or others in the workplace. However, the Company reserves the right to take any necessary and appropriate steps, including imposing alternative COVID-19 prevention measures, to ensure that the individual does not pose a direct threat to the health or safety of others in the workplace.

If you believe you need an accommodation regarding this policy because of a disability or medical condition, you are responsible for requesting a reasonable accommodation as described below.

Religious Accommodation

The Company provides reasonable accommodations, absent undue hardship, to employees with sincerely held religious beliefs, observances, or practices that conflict with work requirements, including this policy.

If you believe you need an accommodation regarding this policy because of your sincerely held religious belief, you are responsible for requesting a reasonable accommodation as described below.

Interactive Process

The Company will engage in an interactive dialogue with you to determine the precise limitations of your ability to comply with this policy and explore potential reasonable accommodations that could overcome those limitations. The Company encourages employees to suggest specific reasonable accommodations. However, the Company is not required to make the specific accommodation requested and may provide an alternative effective accommodation, to the extent any reasonable accommodation can be made without imposing an undue hardship on the Company or posing a direct threat to you or others in the workplace.

How to Request an Accommodation or Exemption

You may request a reasonable accommodation or other exemption from this policy by completing the Company's Request for Exemption from Vaccination Policy Form and returning it to your Human Resources Representative. The forms are available from your Human Resources Representative.

Determinations

The Company makes determinations about requested accommodations and exemptions on a case-by-case basis considering various factors and based on an individualized assessment in each situation. The Company strives to make these determinations expeditiously. The Company will make such determinations in a fair and nondiscriminatory manner and will inform you after we make a determination. If you have any questions about an accommodation or exemption request you made, please contact your Human Resources Representative.

**Alternate COVID-19 Prevention Measures / Continued Testing for Approved Exemptions**

Covered Persons who are granted an exemption or deferral under this policy, or whose request for such an exemption/deferral is pending, must continue to comply with the Company's 72 hour COVID-19 testing requirement for site access, as well as any other safety practices or requirements specified by the Company. For more information, contact your Human Resources Representative.

**Continued Applicability of Other Infection Control Policies and Protocols**

This policy is a key part of our overall strategy and commitment to maintaining a safe and healthy workplace in light of the COVID-19 pandemic. This policy is designed for use together with, and not as a substitute for, other COVID-19 prevention measures, including the Company's Workplace Re-Opening Policies and Procedures, venue specific policies and guidance, and any applicable public health or safety orders in a particular jurisdiction. Company policies are intended as the minimum requirements for our employees and understand that there may be additional requirements and restrictions imposed on certain event workers by professional sports leagues, promoters, performers or artists.

**GINA Safe Harbor**

The Genetic Information Nondiscrimination Act of 2008 ("GINA") prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, **we ask that you not provide any genetic information when responding to this request for medical information**.

"Genetic information," as defined by GINA, includes:

• An individual's family medical history.

• The results of an individual's or family member's genetic tests.

• The fact that an individual or an individual's family member sought or received genetic services.

• Genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

**Policy Administration and Questions**

If you have any questions about this policy or about health and safety issues that are not addressed in this policy, please contact your Human Resources Representative.

## Policy Modification

Government and public health guidelines and restrictions and business and industry best practices regarding COVID-19 and COVID-19 vaccines are changing rapidly as new information becomes available and further research is conducted. The Company reserves the right to modify this policy at any time in its sole discretion to adapt to changing circumstances and business needs, consistent with its commitment to maintaining a safe and healthy workplace.

## Enforcement and Non-Retaliation

Failure to comply with or enforce this policy may result in discipline, up to and including termination of employment.

The Company prohibits any form of discipline, reprisal, intimidation, or retaliation for reporting a violation of this policy or any other health and safety concern. Employees also have the right to report work-related injuries and illnesses, and the Company will not discharge or discriminate or otherwise retaliate against employees for reporting work-related injuries or illnesses or good faith health and safety concerns.

Please reach out to me or a member of HR with any questions.

Thank you,

Angela

### ANGELA BAKER

SVP, HUMAN RESOURCES & OFFICE SERVICES
<[redacted]

# Amended Complaint

Final Audit Report                                                      2023-03-01

| | |
|---|---|
| Created: | 2023-03-01 |
| By: | Michael Peffer (mpeffer@pji.org) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA4DDuCsSh5PGcbIMY2J7OoWU2suQMDJ6S |

## "Amended Complaint" History

🗐 Document created by Michael Peffer (mpeffer@pji.org)
2023-03-01 - 9:16:36 PM GMT- IP address: 38.122.137.242

🖃 Document emailed to mattcampcomedy@gmail.com for signature
2023-03-01 - 9:17:27 PM GMT

🗐 Email viewed by mattcampcomedy@gmail.com
2023-03-01 - 9:34:49 PM GMT- IP address: 66.249.84.205

✍ Signer mattcampcomedy@gmail.com entered name at signing as Matt Camp
2023-03-01 - 9:54:20 PM GMT- IP address: 107.77.230.12

✍ Document e-signed by Matt Camp (mattcampcomedy@gmail.com)
Signature Date: 2023-03-01 - 9:54:22 PM GMT - Time Source: server- IP address: 107.77.230.12

✅ Agreement completed.
2023-03-01 - 9:54:22 PM GMT

**Adobe Acrobat Sign**